IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

| | |
|---|---|
| CARGO AIR, LTD, a Bulgarian entity, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| MIAMI NDT, INC., a Florida corporation; TURBINE ENGINE CENTER, INC., a Florida corporation; ODYSSEY ENGINES, LLC, a Florida limited liability company; and ODYSSEY LEASING, LLC, a Delaware limited liability company, | ) ) ) ) ) ) |
| Defendants. | |

**COMPLAINT**

Plaintiff, Cargo Air, LTD ("Cargo Air"), by and through counsel, sues Defendants Miami NDT, Inc. ("Miami NDT"), Turbine Engine Center, Inc. ("TEC"), Odyssey Engines, LLC ("Odyssey Engines"), and Odyssey Leasing, LLC ("Odyssey Leasing"), and alleges:

1. This is an action for Defendants' breach of a settlement agreement and, in the alternative, conversion of a $1.5 million aircraft engine.

**PARTIES, JURISDICTION, AND VENUE**

2. Cargo Air is a Bulgarian airline company with its principal place of business at 1 Brussels Bldg., Sofia Airport, Bldg. "Cargo Air," 1540 Sofia, Bulgaria. Cargo Air is engaged in the worldwide shipment of cargo and it has been in business for more than twenty years

3. Cargo Air is a limited liability company organized under the laws of Bulgaria. Its members, Angel Petrov, Kiril Georgiev, Petar Cenkov, and Ivan Ivanov, are domiciled in and are citizens of Bulgaria.

1

4. Defendant Miami NDT is a Florida corporation with its principal place of business at 8130 NW 58th Street, Doral, FL 33166.

5. Defendant TEC is a Florida corporation with its principal place of business at 8050 NW 90th Street, Medley, FL 33166.

6. Defendant Odyssey Leasing is a Delaware limited liability company with its principal place of business at 8050 NW 90th Street, Medley, FL 33166. Odyssey Leasing's only member is Defendant Odyssey Engines.

7. Defendant Odyssey Engines is a Florida limited liability company with its principal place of business at 8050 NW 90th Street, Medley, FL 33166. Odyssey Engines' members are David Alan Boyer and Matthew Marsenison, and each is a citizen of Florida. No member of Odyssey Engines is a citizen of Bulgaria or any other foreign state. Indeed, when seeking diversity jurisdiction in another lawsuit, Odyssey Engines represented itself to be a citizen of Florida. *See Integrity Aviation Financing LLC v. Odyssey Engines LLC, et. al.*, Civ. No. 1:19-cv-542 (W.D. Tex.).

8. Upon information and belief, the Defendants are related entities purporting to repair, buy, sell, and lease aircraft engines.

9. This Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. § 1332 in that: (1) the Complaint seeks the recovery of damages in excess of $75,000, exclusive of interest, costs and attorney's fees; and (2) this action is between a citizen of a foreign state and citizens of this state.

10. This Court has jurisdiction over Defendants because each of them: (1) consented to jurisdiction in this Court pursuant to the settlement agreement sued upon; (2) operates, conducts, engages in, or carries on a business or business venture in this state or has an office or

agency in this state that gave rise to this action; and (3) engages in substantial and not isolated activity within this state.

11. Venue is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in this judicial district and a substantial part of the events giving rise to these claims occurred in this judicial district.

## GENERAL ALLEGATIONS

### I. THE UNDERLYING DISPUTE

#### A. *The Dispute as to Engine # 1*

12. Cargo Air entered into an Aircraft Engine Services Agreement with Miami NDT dated July 25, 2018 ("Service Agreement #1").

13. Pursuant to Service Agreement #1, Cargo Air delivered to Miami NDT one CFM56-3 series engine, identified as CFM56-3C1 ESN 725492 (together with all of its parts whether installed on or relating to the engine and all records and manuals relating thereto, "Engine #1"), for overhaul and part replacement work to be performed by Miami NDT. A copy of Service Agreement #1, together with its Annex 1, is attached hereto as Exhibit 1.

14. Pursuant to Annex 1 to Service Agreement #1, Miami NDT was to complete the service work and return Engine #1 to Cargo Air within 90 days of induction.

15. Engine #1 was inducted on August 6, 2018; thus the 90 day delivery date expired on November 6, 2018.

16. However, by June 2019, **over 220 days** after induction, Miami NDT had still failed to complete the service work and deliver Engine #1 to Cargo Air.

17. Thus, Cargo Air made demand on Miami NDT to immediately return Engine #1 and informed Miami NDT that absent an acceptable resolution, Cargo Air would file suit to enforce its rights.

### B. The Dispute as to Engine # 2

18.	Cargo Air entered into a separate Aircraft Engine Services Agreement with TEC dated December 5, 2018 ("Service Agreement #2").

19.	Pursuant to Service Agreement #2, Cargo Air delivered to TEC one CFM56-3 series engine, identified as CFM56-3C1 ESN 858467 (together with all of its parts whether installed on or relating to the engine and all records and manuals relating thereto, "Engine #2"), for overhaul and part replacement work to be performed on Engine #2. A copy of Service Agreement #2 is attached hereto as Exhibit 2.

20.	Under Service Agreement #2, TEC represented that it would subcontract all of the service work to Miami NDT and that the service work would have a maximum turnaround time of 90 days.

21.	Service Agreement #2 further provides that, if TEC causes any delay to the turnaround time beyond April 1, 2019, TEC is required to "pay compensation of $20,000.00 for each delayed month … and shall supply to Customer free of charge an engine for the lease, in order to cover the Customer's engine needs, for the period until [Engine #2] is ready for dispatch."

22.	Engine #2 was inducted on January 1, 2019; thus the 90 day delivery date expired on April 1, 2019.

23.	However, by June 2019, *over 170 days* after induction, TEC had still failed to complete the service work and to deliver Engine #2 to Cargo Air.

24.	Pursuant to Service Agreement #2, TEC, through Odyssey Leasing, supplied Cargo Air with a replacement CFM56-3 series engine, identified as CFM56-3C1 ESN 858440 (together with all of its parts and all records and manuals relating thereto, the "Replacement Engine"). However, TEC failed to pay Cargo Air the $20,000/month owed for April and May.

4

25. Thus, in June 2019, Cargo Air informed TEC that absent an acceptable resolution, Cargo Air would file suit to enforce its rights.

## II.  DEFENDANTS BREACHED SETTLEMENT AGREEMENT #1

26. Throughout June 2019, the parties attempted to resolve the foregoing disputes, and on or about June 21, 2019, the parties executed a "Settlement Agreement Between and Among Turbine Engine Center, Inc., Miami NDT, Inc., Odyssey Engines, LLC, and Odyssey Leasing, LLC, on the one hand, and Cargo Air Ltd., on the other hand" ("Settlement Agreement #1").  A true and correct copy of the fully executed Settlement Agreement #1 is attached hereto as Exhibit 3.

27. As to Engine #1, Settlement Agreement #1 required Miami NDT to ship Engine # 1, within five days, to a maintenance, repair and overhaul facility in Serbia selected by Cargo Air due to fact that the final repair of Engine # 1 was never completed by Miami NDT.

28. While not timely, Miami NDT eventually complied with this provision and Engine #1 was shipped to the Serbian facility, where it had to undergo additional costly repairs due to Defendants' defective workmanship.

29. As to Engine #2, which, upon information and belief, is disassembled with parts scattered amongst Defendants and their many subcontractors, the Settlement Agreement allowed Cargo Air to take ownership of the Replacement Engine in exchange for transferring ownership of Engine #2 to Odyssey Leasing.

30. Specifically, Settlement Agreement #1 required Odyssey Leasing, within 7 days, to provide certain records related to the Replacement Engine to Cargo Air and, upon Cargo Air's satisfactory inspection of such records, to "convey to Cargo Air clean title, *free and clear of any liens* . . . ."  (emphasis added).

31. Should Odyssey Leasing "fail to . . . convey title [to the Replacement Engine] to Cargo Air *free of any liens,*" the following procedure was to apply:

> a. TEC is to ship all parts related to Engine #2 to the Serbian facility (JAT Tehnika) identified by Cargo Air;
>
> b. TEC is to provide Cargo Air with a parts inventory and certain documentation related to all parts of Engine #2;
>
> c. TEC is to provide a list of all subcontractors with possession of parts related to Engine # 2 and Defendants are to assign all rights under such contacts to Cargo Air such that Cargo Air can obtain possession of the parts; and
>
> d. Cargo Air is entitled to keep possession of the Replacement Engine until all work is completed at the Serbian facility (JAT Tehnika) on Engine #1 and Engine #2 and both engines have been returned to service.

32. In the event Defendants failed to convey good title to the Replacement Engine, Settlement Agreement #1 also required Defendants to compensate Cargo Air for having to find and lease other replacement engines:

> In case Odyssey Leasing, fail to deliver free of liens title for ESN 858440 to Cargo Air and all documents pertaining to the engine as set in Paragraph 5, Cargo Air will exercise its rights under Article 2.4 of the Engine #2 Agreement, *viz.* TEC or its affiliates will pay to Cargo Air compensation of $20,000 for each month, prorated as appropriate, beginning April 1, 2019 as set and $35,000 per month for lease engine until the Engine has been returned to service, plus all shipping costs required to collect the parts and components from the vendors. Till that date the accumulated amount is $165,000. Payments shall be made in advance on the first day of each month. TEC obligation for these payments shall be secured by a lien on the Replacement Engine.

33. Finally, Settlement #1 Agreement provided that time is of the essence and that all Defendants "shall guarantee the performance of the other [Defendants] as set forth in [the Settlement Agreement], and they shall be liable jointly and severally for any breach of this Agreement."

6

34. During the negotiation and execution of Settlement Agreement #1, Defendants never informed Cargo Air of any creditor liens affecting the Replacement Engine.

35. However, Cargo Air subsequently learned of a lien filed in Delaware by Preferred Bank against Odyssey Leasing. The lien purports to cover all assets of Odyssey Leasing, including the Replacement Engine.

36. Cargo Air immediately informed Defendants that it had become aware of the lien and requested that Defendants contact Preferred Bank and obtain a release. However, Defendants failed to do so. As a result, Defendants failed to convey to Cargo Air clean title, free of any liens, in the Replacement Engine.

37. Despite failing to provide clean title to the Replacement Engine, Defendants also failed to comply with the Settlement Agreement's return requirements as to Engine # 2 and failed to pay Cargo Air $55,000/month since April 1, 2019 as required by the Settlement Agreement.

38. In turn, on September 17, 2019, Cargo Air filed a two-count Complaint with this Court, alleging breach of Settlement Agreement #1 and conversion of Engine # 2.

### III. DEFENDANTS BREACHED SETTLEMENT AGREEMENT #2

39. Again, in an attempt to resolve this dispute, on or about January 23, 2020, Cargo Air entered into a second Settlement Agreement ("Settlement Agreement #2") with Defendants. A copy of Settlement Agreement #2 is attached hereto as Exhibit 4.

40. Under Settlement Agreement #2, Odyssey Leasing was required to, among other things:

   a. Convey clean title, *free and clear of any liens*, to the Replacement Engine within five business days of the execution of the agreement;

   b. Pay Cargo Air a total sum of $522,500.00 ("the Settlement Payment") on or before March 1, 2020; and

      c. Pay Cargo Air's attorneys' fees in connection with this matter through and until the time of the transfer of the Replacement Engine and full payment of the Settlement Payment.

41. Paragraph 10 of Settlement Agreement #2 further provides that if the Defendants failed to timely make the payments required, "Cargo Air ***shall immediately be entitled to a Final Judgment*** against the Miami Parties, jointly and severally, in the amount of $522,500.00, plus reasonable attorney's fees" (emphasis added). And, this remedy is in addition to "all other rights and remedies allowed under th[e] Agreement or applicable law:"

> 10. **Judgment for Cargo Air Upon Payment Default**: If the Miami Parties fail to timely make any payment owed under this Agreement, Cargo Air shall immediately be entitled to a Final Judgment against the Miami Parties, jointly and severally, in the amount of $522,500.00, plus reasonable attorneys' fees, but less any payments received by Cargo Air under the Agreement. The Parties agree that upon the Miami Parties' failure to comply with the payment terms of this Agreement, counsel for Cargo Air shall be entitled to file with the Court a Motion for the Entry of a Final Judgment supported by an affidavit of non-payment. The Motion for the Entry of a Final Judgment may be filed in the Action before the Court that has retained jurisdiction over this Agreement. The Court shall enter the Final Judgment after a hearing on motion calendar, with notice by email to the Miami Parties through its counsel, Evan Berger, at eberger@beckerlawyers.com. The Miami Parties expressly agree to accept service by email to its counsel at eberger@beckerlawyers.com. The Miami Parties agree to waive all defenses to entry of the Final Judgment other than payment under the terms of this Agreement. Cargo Air's rights under this provision shall be in addition to all other rights and remedies allowed under this Agreement or applicable law.

42. Settlement Agreement #2 again provides that time is of the essence and that each of the Defendants "guarantees the performance of the other [Defendants] as set forth in [the Settlement Agreement], and [they] shall be jointly and severally liable for any breach of this Agreement."

43. Despite their repeated contractual promises, Defendants have breached Settlement Agreement #2.

44. Specifically, Defendants have again failed to convey to Cargo Air clean title, free and clear of any liens, to the Replacement Engine.

8

45. Defendants have also failed to pay Cargo Air $522,500.00 on or before March 1, 2020 as required by Settlement Agreement #2.

46. Additionally, Defendants have failed to pay Cargo Air's attorneys' fees in connection with this matter as indicated in paragraphs 4 and 10 of Settlement Agreement #2.

47. As a result, Cargo Air has suffered damages, including, but not limited to, loss of value of the Replacement Engine, loss of Engine # 2 (valued at approximately $1.5 million dollars), lost business revenue, and loss of $522,500.00 as well as attorneys' fees owed under Settlement Agreement #2.

48. Cargo Air has retained undersigned counsel to prosecute this action on its behalf and is obligated to pay its attorney's fees and costs.

49. Cargo Air has fully performed all of its obligations under Settlement Agreement #2 and/or any nonperformance has been waived by Defendants.

50. All conditions precedent to the filing of these claims have occurred, been waived, or been satisfied.

## COUNT I
### Breach of Contract Against Defendants

51. Cargo Air hereby realleges each and every allegation contained in paragraphs 1 through 50, inclusive.

52. Cargo Air and Defendants entered into Settlement Agreement #2.

53. Under Settlement Agreement #2, Defendants were required to, within five business days of the execution of the agreement, convey title to the Replacement Engine free of any liens to Cargo Air. Additionally, Defendants were required to pay Cargo Air (i) a total sum of $522,500.00 on or before March 1, 2020 and (ii) its attorneys' fees.

54. As set forth above, Defendants have breached Settlement Agreement #2 by failing to convey title to the Replacement Engine free of any liens and by failing to pay Cargo Air (i) a total sum of $522,500.00 on or before March 1, 2020 and (ii) its attorneys' fees.

55. Cargo Air has fully performed all of its obligations under the terms of Settlement Agreement #2 and/or any nonperformance has been waived or excused by Defendants.

56. As a result of Defendants' breach of Settlement Agreement #2, Cargo Air has suffered damages, including, but not limited to, loss of value of the Replacement Engine, loss of Engine # 2 (valued at approximately $1.5 million dollars) and over $522,500.00 owed under Settlement Agreement #2.

WHEREFORE, Cargo Air prays for the entry of a judgment:

(a) ordering Defendants to immediately convey clean title, *free and clear of any liens*, to the Replacement Engine or, alternatively, awarding Cargo Air its damages for Defendant's failure to convey clean title to the Replacement Engine and for Cargo Air's loss of Engine #2;

(b) awarding damages in excess of $522.500.00;

(c) awarding attorneys' fees and costs pursuant to Sections 4 and 10 of Settlement Agreement #2 and Section 6.5 of the Service Agreements;

(d) awarding pre-judgment interest and costs; and

(e) granting such further relief as the Court may deem just and proper.

## COUNT II (in the alternative)
## Conversion Against Defendants

57. Cargo Air hereby realleges each and every allegation contained in paragraphs 1 through 50, inclusive.

58. Defendants knowingly obtained possession of Engine # 2, which is a separate, identifiable piece or property.

59. Despite Cargo Air's demands, Defendants repeatedly failed to return Engine #2 to Cargo Air after failing to perform under Service Agreement #2.

60. Through both Settlement Agreement #1 and Settlement Agreement #2, Defendants agreed to transfer clean title to the Replacement Engine to Cargo Air in exchange for Defendants' retention of Engine #2.

61. Defendants, however, have repeatedly failed to convey clean title to the Replacement Engine to Cargo Air. Incredibly, Defendants have also continued to refuse to return Engine # 2 without any legal justification or support.

62. Accordingly, Defendants have intentionally deprived Cargo Air of Engine # 2 either permanently or for an indefinite period of time.

63. This deprivation is inconsistent with Cargo Air's possessory interest in Engine # 2.

WHEREFORE, Cargo Air prays for the entry of a judgment:

    (a)    awarding damages in excess of $75,000;

    (b)    awarding attorneys' fees and costs pursuant to Section 4 and 10 of the Settlement Agreement and Section 6.5 of the Service Agreements;

    (c)    awarding pre-judgment interest and costs; and

    (d)    granting such further relief as the Court may deem just and proper.

DATED: May 28, 2020

    Respectfully submitted,

    COZEN O'CONNOR
    Southeast Financial Center, Suite 3000
    200 South Biscayne Boulevard
    Miami, FL 33131-2352
    Telephone: (305) 704-5940
    Facsimile: (305) 704-5955

    By:  /s/ Jason R. Domark
    Jason R. Domark
    Florida Bar No. 0880191
    jdomark@cozen.com
    Reid Kline
    Florida Bar No. 0908991
    rkline@cozen.com
    Janet Rayo
    Florida Bar No. 1018702
    jrayo@cozen.com